IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

CRITICAL NURSE STAFFING, INC.,

        Plaintiff,

v.                                    No. CIV 12-1054 ACT/LFG

GIVING HOME HEALTH CARE, LLC,

        Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on two motions filed by Plaintiff Critical Nurse Staffing,

Inc.'s ("CNS"): (1) CNS's First Motion to Compel [Doc. 51]; and (2) CNS's First Motion for

Extension of Time to Complete Discovery [Doc. 85].  Both motions are fully briefed [Docs. 51, 60,

70, 71] and [Docs. 85, 91, 96, 97].  After careful consideration of the pertinent law, pleadings, and

attachments, the Court denies both motions, with one possible exception as discussed below.

### Background

On October 12, 2012, CNS filed a complaint against Defendant Giving Home Health Care,

LLC ("Home Health") alleging claims of civil conspiracy, intentional interference with contract,

tortious interference with contract, and violations of 15 U.S.C. § 1125, by misleading both current

and prospective Energy Employees Occupational Illness Compensation Program Act ("EEOICPA")[1]

---

[1]The EEOICPA establishes a compensation program that provides benefits to certain employees who suffer from illnesses related to their exposure to beryllium and radiation in connection with the performance of their work for the Department of Energy. Gomez v. U.S., 459 F. App'x 701, at *1 (10th Cir. Feb. 1, 2012) (unpublished).  Congress passed the EEOICPA to provide a compensation mechanism for men and women suffering injury related to their employment in the nuclear defense industry. Barrie v. U.S. Dept. of Labor, 805 F.Supp.2d 1140, 1141 (D. Colo. 2011).

clients. [Doc. 1.] CNS seeks an award of damages in relation to all four causes of action. [Doc. 1, at 6.]

More specifically, CNS argues that representatives of Home Health engaged in actions "with the specific purpose of damaging CNS's business operations within New Mexico" and that Home Health engaged in a civil conspiracy with unnamed co-conspirators. [Doc. 17, at 1.]  CNS alleges that Home Health engaged in such activities with individual who were under contract with CNS to provide in-home health care services to its patients and that Home Health knew or should have known about the contracts. [Id., at 2.]

Home Health asserts that the civil conspiracy claim is fatally flawed due to CNS's failure to adequately identify alleged conspirators.  Home Health further denies the existence of a conspiracy.  Additionally, Home Health argues that the contract claims are fatally flawed and denies taking any action to interfere with contracts involving CNS.  Generally, Home Health denies all alleged violations made by CNS. [Id., at 3.] Home Health raised a number of affirmative defenses. [Id., at 4.]

On February 8, 2013, the Honorable Alan C. Torgerson scheduled a jury trial to commence on September 9, 2013.  [Doc. 30.] On February 13, 2013, the undersigned Magistrate Judge entered an Order approving entry of a Stipulated Protective Order. [Doc. 35.] In addition, a settlement conference is set for August 20, 2013. [Doc. 98.]

On May 29, 2013, Home Health filed a motion for summary judgment that was fully briefed as of June 19, 2013.  [Doc. 89.]

<u>**Discussion**</u>

I.    <u>**CNS's Motion to Compel**</u> [Doc. 51]

    *A.*    <u>***Summary of Dispute***</u>

On January 30, 2013, CNS served interrogatories and document requests on Home Health. On March 6, 2013, Home Health filed answers and objections. [Doc. 51, Exhibits ("Ex.") A, B.] The parties attempted to work out the present discovery disputes without success.  They agreed, however, to allow CNS additional time to file the motion to compel. [Doc. 51, at 4 n.1.]

At issue are Home Health's answers to Interrogatory Nos. 16, 17, 18, and 19, and its responses to Document Request Nos. 4, 7, 8 and 12.

    *B.*    <u>***Interrogatory No. 16***</u>

This interrogatory asks Home Health to identify "every EEOICPA qualified patient" for whom it ever provided health care services as a result of the patient's qualification for in-home healthcare as an EEOICPA beneficiary.  Interrogatory No. 16 further requests that Home Health include in its response:

> a complete explanation of the type(s) of services provided (i.e., RN, LPN or HHA services), the date you began providing services, the date you stopped providing services (if applicable), as well as the names(s) [sic] of each individual who provides or provided services on your behalf to each such identified individual, including the name, address and telephone number of every individual identified in your response.

[Doc. 51-1, at 8.]

Home Health objected on a number of grounds: (1) unjustifiably seeks HIPPA protected patient information; (2) unjustifiably seeks proprietary and protected business practice information; (3) seeks personal and sensitive information regarding Home Health's employees and contractors who have a reasonable expectation of privacy; (4) is overly broad and unduly burdensome to the

point of being "impossible to answer;" and (5) is irrelevant to claims and issues and is not reasonably calculated to lead to discovery of admissible evidence. [Doc. 51-1, at 9.]

Home Health further explains in relation to the scope objection that CNS's claims arise from the transfer of care of four (4) individuals in New Mexico, who CNS identified in its first initial disclosures. Thus, according to Home Health, the overly broad request exceeds the bounds of Rule 26(b) and amounts to a fishing expedition.

Without waiving these objections, Home Health provided information about the four patients it claims are at issue: Kelly Lopez (care provided from 9/12 to 4/26/13/present); Eugenio Sandoval (care provided from 6/23/12 through 1/3/13); Rudy Gonzalez (care provided from 6/23/13 through 4/26/13/present); and Alfonzo Murrieta (care provided from 6/21/12 through 4/26/13/present).

In CNS's second initial disclosures, it identified a fifth patient in relation to its claims: Franklin Rodarte. Thereafter, Home Health supplemented its answer to Interrogatory No. 16, by providing responsive information about Mr. Rodarte. [Doc. 91-2, at 5.] In addition, Home Health noted that it enrolled only two other EEOICPA patients (Jose Sena and Andrew Martinez), whom it enrolled as EEOICPA patients within 90 days of those patients' terminations of services with CNS, from the date of Home Health's formation in 2012. Thus, Home Health provided responsive information about those two individuals as well. [Doc. 91-2, at 5-6.]

1.   Parties' positions

CNS first asserts that the Stipulated Protective Order in this case protects any information disclosed regarding the identities of patients, employees and contractors. CNS argues that "all" it requests from Home Health is that Defendant "identify its patients as well as all current and former employees and contractors assigned to provide care to each identified patient." Based on such disclosures, CNS can then determine whether the identified individuals were ever patients of CNS

4

or if they ever worked for CNS, thereby allowing CNS "to attempt to determine whether they were involved in the causes of action" as alleged.  According to CNS, there is no question that the information sought is relevant and reasonably calculated to lead to the discovery of admissible evidence. [Doc. 51, at 7.]

Home Health argues "that the simple fact a patient or employee was once with [CNS] and is now with [Home Health] is immaterial and irrelevant in and of itself." [Doc. 60, at 8.]  In addition, Home Health states that it "repeatedly offered to provide this very information to [CNS] and [CNS] has repeatedly rejected such offers." [Id.] Home Health did not cite any attachment or letter to support its position; however, correspondence attached to the motion confirms proposals were made.

CNS asserts that Home Health appears to argue it tried to work out a compromise with CNS but that CNS was uncooperative.  According to CNS, this is not true.  Further, Home Health "flatly refused to provide any information and/or documentation" concerning the discovery requests at issue. [Doc. 70, at 1.]

In reference to these discovery disputes, on April 17, 2013, CNS sent defense counsel a letter that contained CNS's proposed compromise regarding the discovery requests in dispute. [Doc. 51, Ex. C.] In the April 17 letter, CNS states it was willing to allow Home Health to identify its patients and employees without specifically identifying each by name.  More specifically, CNS suggested that Home Health identify all individuals by date of birth with the last four digits of the social security numbers and dates of hire, or the date when each patient notified Home Health that they wished to have that company "provide their in-home health care provider [sic?] under the EEOICPA." [Doc. 51-3, Ex. C.]

In accordance with this process, CNS stated that if it could identify any specific individual (disclosed by Home Health) as a former patient who notified CNS "of their intention to change care

5

providers within ninety (90) days of the start of care with [Defendant]," Home Health then "would agree" to provide all of the originally requested information.  CNS's attorney believed that defense counsel intended to discuss or already did discuss this proposal with the client and asked for Defendant's response to the proposal. [Doc. 51-3, Ex. C.]

Defense counsel had some computer problems about which he notified CNS.  On April 23, 2013, Home Health responded to the April 17 letter and proposal.  Home Health stated it stood by its objections and continued to find the requests to be too broad.  However, Home Health proposed that CNS provide Home Health with the identification of any patient or employee who left CNS since 2012 to go to other providers.  Home Health would then determine if any of the identified patients or employees were serviced or hired by Home Health.  Documentation relating to the identified patients or employees would be provided in accordance with the Protective Order. [Doc. 51-5, Ex. E.]

Home Health counsel further stated in the letter that it suggested 2012 as the pertinent date because Home Health came into existence in 2012.  This process, according to Home Health, allowed CNS to know exactly which patients and employees left CNS and went to Home Health and would protect Home Health from inappropriate and overly broad intrusion of its business records. [Id.]

CNS argues that such compromise offers are not offers at all, and that, instead, Home Health seeks to "flip the discovery process upside down." [Doc. 70, at 2.] CNS states that such an offer shifts the burden of production to it.  In other words, CNS would be providing discovery to Home Health in order to get answers to its requests.  The Court disagrees.

2.     <u>Analysis</u>

Rule 26 defines the scope of discovery. Parties may obtain discovery regarding any nonprivileged matter that is relevant to a party's claims or defenses. Fed. R. Civ. P. 26(b)(1). Relevant information need not be admissible at trial but must appear reasonably calculated to lead a to the discovery of admissible evidence. All discovery, however, is subject to limitations set out in Rule 26(b)(2)(C).

That portion of Rule 26 allows a court to limit discovery if it determines that the discovery sought is unreasonably cumulative or duplicative, or could be obtained from another source that is more convenient or less expensive. In addition, a court can limit discovery requests if the burden or expense of the proposed discovery outweighs its likely benefit in view of the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake, and the importance of the discovery at issue. Fed. R. Civ. P. 26(b)(2)(C)(i) and (iii).

While the scope of discovery typically is broad, the 2000 amendments to Rule 26 intended to involve the court more actively in regulating the breadth of sweeping or contentious discovery. Committee notes to the amendments indicate that involvement of the court in managing discovery is an important method of controlling problems of inappropriately broad discovery. The Committee intended that the parties and the court focus on the actual claims and defenses involved in the litigation. The determination of whether information is discoverable depends on the circumstances of each case.

This rule change signaled to the court that it "has the authority to confine discovery to the claims and defenses," and also signaled to parties that they were not entitled to develop new claims or defenses not already identified in the pleadings. Advisory Committee Notes, 2000 Amendments, Rule 26(b)(1). The Court is to balance one party's right of discovery against the opposing party's

7

right to be free from intrusive and burdensome discovery. *See, e.g.,* Koch v. Koch Indus., Inc., 203 F.3d 1202, 1238 (10th Cir.), *cert. denied*, 531 U.S. 926 (2000).

The Court balanced CNS's needs for the requested discovery against the burden on Home Health in accordance with Rule 26(b)(2)(C) and determines that the interrogatory is impermissibly broad. The interrogatory is unlimited in time although perhaps CNS intended to limit the request to 2012, when Home Health came into existence. Certainly, CNS would not be required to provide information predating its formation.

In addition, the Court finds that Home Health's proposal that CNS identify any patients or employees that transferred to Home Health was an appropriate way to narrow the discovery request. Indeed, Home Health supplemented its answers once CNS identified a fifth patient, and in addition, Home Health supplied information about two additional patients who Home Health enrolled within 90 days of the dates those patients terminated services with CNS. [Doc. 91-2, at 3.]

CNS is reminded that it should not file suit precipitously and then attempt to exploit the discovery process in order to uncover additional grounds to support the claims. It is responsible for finding support for its claims and determining the appropriateness of filing suit.

The discovery request for Home Health to identify "every EEOICPA qualified patient [it has] ever provided health care services to as a result of [these patients'] qualification for in-home healthcare . . . ." is not limited at all in terms of how such health care services impacted CNS. Morever, notwithstanding the Stipulated Protective Order [Doc. 35], a request for unlimited patient and employee information, such as that propounded by CNS, invites misuse of confidential business information in a competitive industry. The request is unbounded and not proportional to the needs of the case. In reviewing the proportionality of the request, *see* Rule 26(b)(2)(C), the Court sustains

the objections based on overbreadth and relevancy and determines that Home Health sufficiently

answered Interrogatory No. 16.

     *C.*     ***Interrogatory No. 17***

     Interrogatory No. 17 asks Home Health to provide the following information:

> Identify every person who has or whom you believe may have information *that is relevant to . . . CNS's business* in New Mexico, Arizona, Utah, Nevada and Colorado, and describe in detail such person's knowledge.  This includes, but is not limited to any knowledge regarding CNS's treatment of EEOIPCA patients, the marketing of its business in these areas or licensure by the United States Department of Labor or any other agency in New Mexico, Arizona, Utah, Nevada or Colorado related to CNS's treatment of EEOIPCA patients.

[Doc. 51-1, at 10] (emphasis added).  Home Health properly objected, stating that it was not in the

position to make determinations as to what might be relevant to CNS's business dealings.  Subject

to this objection, Home Health noted that it identified in its initial disclosures any individuals who

were aware of  information relevant to the claims or who might have information that could lead to

the discovery of admissible evidence. [Id.]

     1.     <u>Parties' positions</u>

     CNS argues that the question "simply" asks Home Health to identify "anyone, whether they

be affiliated with, employed by or known to the Defendant whom the Defendant believes or knows

has knowledge of the business the Plaintiff conducts in any of the identified regions." [Doc. 51, at

7-8.]

     Home Health argues, *inter alia*, that the interrogatory asks for it to speculate as to CNS's

business operations.  It further asserts that the request is overly broad and not reasonably calculated

to lead to the discovery of admissible evidence in relation to Home Health's acquisition of the

patients who are at issue in this controversy.  Home Health also contends that there was no Rule 37

good-faith discussion regarding Interrogatory No. 17 before CNS filed this motion to compel. [Doc. 60, at 9.]

CNS "vehemently disagrees" that counsel failed to make good-faith attempts to resolve this issue before filing the motion. CNS further states that during a March 28 telephonic conference with defense counsel, CNS counsel explained what the interrogatory sought: "a list of anyone [Home Health] knows of, whether such individual(s) work with or for the Defendant or any other provider of these type of services to this specific group of eligible beneficiaries, whom the Defendant believes or knows to have knowledge of the Plaintiff's business practices in the identified region." [Doc. 70, at 3.] CNS admits that it did not mention this interrogatory in the April 17 letter but maintains that counsel discussed it during the March 28 conference.

2.  <u>Analysis</u>

Everything about Interrogatory No. 17, as well as CNS's explanations of the information it seeks, is over broad, to the extent of being almost incomprehensible, *e.g.,* lists of "anyone Defendant knows of" who did or did not work with Defendant, who provided "these types of services" to "this specific group," whom Defendant "believes or knows to have knowledge" of "Plaintiff's business practices" in a wide geographical region, including five states.

CNS provides no convincing explanation why such a vast request for unlimited information, relating to five states, is relevant or reasonably calculated to lead to the discovery of admissible information. Indeed, the interrogatory sounds like an attempt to have Home Health research grounds and support for CNS's litigation. The request is inappropriate under the proportionality standards of Rule 26(b)(2)(C). After balancing CNS's need for the requested information against the expenses and burdens of producing such information, even if could be identified and located, the Court sustains Home Health's objections. No further response to Interrogatory No. 17 is required.

### D.    *Interrogatory Nos. 18 and 19*

Interrogatory No. 18 asks Home Health to identify every person who worked for, or on behalf of Defendant, in "any way on any aspect" of Home Health's business in New Mexico, Arizona, Utah, Nevada and Colorado since 2009.  Home Health was to describe "in detail" each such person's duties and actions in connection with Home Health's business.  Interrogatory No. 19 asks Home Health to identify any employee or individual who was an independent contractor of Home Health from January 1, 2009 to the present.  [Doc. 51-1, at 11.]

Home Health objected on various grounds: (1) unjustifiably seeks proprietary and protected business practice information; (2) is over broad and unduly burdensome; and (3) is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.  Without waiving the objections, Home Health stated it identified in responses to previous interrogatories all of its contractors or employees who provided services to the four patients (CNS first identified).  Home Health identified two other employees responsible for overseeing operations of its business. [Id.]

### 1.    Parties' positions

CNS claims Home Health refused to respond to these interrogatories in any manner and at any time. [Doc. 51, at 8.] In addition, CNS argues that the Stipulated Protective Order addresses any fears about protected proprietary information.  According to CNS, the undue burden objection lacks merit based on Home Health's assertion that it has only been in existence since 2012.  CNS further argues that it has "a right to determine whether the Defendant now does or, has since its inception, employed or worked with anyone who previously worked as an employee or independent contractor with Plaintiff."  According to CNS, such information is relevant so CNS can cross reference those identified with its own personnel records to determine if any identified individual worked with any

of Home Health's patients.  "Only then can the Plaintiff identify all of those involved in the civil conspiracy." [Id., at 9.]

Home Health argues that there are much less intrusive and burdensome ways for CNS to obtain the identification of employees and contractors who left CNS and landed with Home Health. According to Home Health, it proposed at least three alternatives [Doc. 60, at 9].  The Court is aware of one proposal made Home Health's April 23, 2013 letter.  [Doc. 51, Ex. E.]

2.   <u>Analysis</u>

The Court again finds the interrogatories are over broad and unduly burdensome.  The interrogatories, as phrased, are not limited to a list of employees or contractors who worked both for CNS and Home Health.  Instead, CNS seeks identification of all of Home Health's employees and contractors from 2009.  While CNS then argues the requests are limited in scope by Home Health's own assertion that it was not formed until 2012, CNS provides no explanation for the 2009 date restriction.  More importantly, while CNS argues that the Stipulated Order would protect disclosure of Home Health's employees' and contractors' information, CNS is disinclined to provide the very same type of information to Home Health in an effort to narrow the request and information sought.

While CNS may seek additional information of an alleged conspiracy, it is the party bringing the lawsuit who must provide support for its claims. It cannot expect to obtain a broad array of employment information from Defendant in order to ferret out possible support for its claims.  After balancing CNS's need for the information against Home Health's burden of providing the information, the Court sustains the objections.  After consideration of the balancing test, discussed in <u>Koch v. Koch</u> and the proportionality factors under Rule 26(b)(2)(C), the Court concludes that Home Health need not respond further to Interrogatory Nos. 18 and 19.

12

D.     *Document Request Nos. 4, 7, 8, and 12*

Document Request No. 4 asks Home Health to provide the "complete file" it kept with respect to each individual providing health care services to any EEOICPA-qualified patient for whom Home Health provided in-home health care. [Doc. 51-2, at 2.]  Number 7 asks for a copy of every contract Home Health "ever had" with any individual or entity under which those individuals or entities agreed to provided [sic] in[-]home health care services to EEOICPA-qualified patients. [Id., at 4.] Number 8 asks for a list of individuals, including RNs, LPNs, and HHAs, who currently provide health care services to EEOICPA-qualified patients under an agreement with Home Health, including those individuals' address and contact information.  Number 12 requests "all payroll records, independent contractor lists, employee lists, rosters and other such documents which show the names, positions, addresses, and/or telephone numbers of [Home Health's] officers, employees and independent contractors from January 2009 to date." [Id., at 6.]

Home Health objected on various grounds to all four document requests, including, for example, privacy expectations of its employees and contractors, overbreadth, undue burden, and lack of relevancy. [Id., at 2.] With respect to Document Request No. 7, Home Health included additional objections on grounds that the request was overreaching, intended to harass, and there was no justifiable need for such information, except perhaps as it related to the patients identified.

Subject to the objections, Home Health produced the requested documents for employees and contractors who worked with any of the first four identified individuals. [*See, e.g.,* Doc. 51-2, at 2.] Home Health supplemented this response to include information about employees or contractors who worked with the three newly identified patients. [*See, e.g,* Doc. 91-3, at 2.]

       1.     <u>Parties' positions</u>

CNS sets out no new arguments as to why the Court should order Home Health to answer these document requests more fully than it already did.  CNS simply states that Document Request Nos. 4, 8 and 12 ask for documentation for individuals identified in Interrogatory Nos. 18 and 19. [Doc. 51, at 8.] CNS argues that Home Health provided no documentation (other than documents related to four of the five former patients CNS identified in disclosures) in response to Document Request No. 7. [<u>Id.</u>, at 9.] "The purpose of this document production request is to cross reference those identified in any documents produced in response to it, with the former employees or individuals who worked with Plaintiff in an effort to determine whether any other conspirators exist." [<u>Id.</u>]  CNS further contends it must have this information to fully determine the extent of the alleged conspiracy as well as the interference with contract claims. [<u>Id.</u>, at 10.]

Home Health again argues there are less intrusive and burdensome ways for CNS to obtain the information it seeks in accordance with proposals already made by Home Health. [Doc. 60, at 9.] Home Health further asserts that CNS requests sensitive financial information about Home Health and its employees that could be used to harm Home Health and its business efforts.

Home Health also contends that CNS appears to suggest that if an employee or contractor once worked with CNS and then later for Home Health, the presumption is that the person must be a conspirator and bad actor.  Home Health states this is a flawed presumption.  The Court agrees.

Home Health notes that it offered to provide CNS with the identities of any of its contractors and employees who came to Home Health from CNS.  It is not clear if CNS already provided this information to CNS, but the Court directs Home Health to do so and to provide the responsive pertinent documents for these individuals, in accordance with the Stipulated Protective Order.

2.    Analysis

After conducting the appropriate proportionality analysis under Rule 26(b)(2)(C), the Court concludes that CNS's need for the requested information is outweighed by the burden imposed on Defendant.  Home Health need not respond further to Document Request Nos. 4, 7, 8 and 12, with the exception of information Home Health offered to provide as discussed *supra*.

**II.    CNS's Motion for Extension of Time to Conduct Discovery** [Doc. 85]

Discovery closed on June 7, 2013. [Doc. 19.] CNS attempted to obtain concurrence from Home Health to extend the discovery deadline, but Home Health opposed this request.  On the close of discovery, CNS filed the present motion asking for a 60-day extension of discovery through August 6, 2013.[2] [Doc. 85, at 6.] As noted earlier, a jury trial in this case is scheduled to begin on September 9, 2013.

In support of CNS's request for an extension of discovery, it notes that in relation to the ruling on Defendant's motion to compel, the Court allowed Home Health ten days through June 10, 2013, to resubmit modified interrogatories to CNS.  The Court also ordered CNS to submit supplemental responses to several interrogatories, by the same date, *i.e.,* a few days after the discovery deadline passed.

CNS notes that as of the date it filed the present motion, the Court had yet to rule on its motion to compel.  CNS argues that due to Home Health's refusal to answer some of CNS's discovery requests, CNS has not taken a deposition.  CNS states that it would like to depose at least four individuals, who it lists in its motion. [Id., at 4.] However, CNS urges that it cannot determine

---

[2]In its reply, CNS now requests a 60-day extension of discovery from the date Defendant is ordered to produce information in relation to CNS's motion to compel. [Doc. 96, at 5.] However, essentially, the Court did not order Home Health to produce any information, except in one limited area, and Home Health may already have produced that information.

who else to depose until the Court directs Home Health to answer outstanding discovery requests. According to CNS, Defendant also has yet to take a deposition, even though discovery closed.  In further support of its motion, CNS asserts that Home Health "rebuffed efforts" to attend a private mediation.

In Home Health's response, it states that CNS's argument does not constitute "good cause" sufficient to justify extending discovery deadlines.  Home Health claims that CNS's "real motivation" in seeking an extension is to delay the Court's ruling on Home Health's summary judgment motion.  Home Health argues that nothing impeded CNS from taking depositions.  In the eight months since filing the Complaint, CNS never attempted to take a single deposition. [Doc. 91, at 2.]

Home Health notes that whether or not it took depositions is immaterial to CNS's request for more time to conduct discovery.  According to Home Health, there is no reason CNS could not have taken certain depositions before the Court ruled on its motion to compel.  This is true because CNS already received information and documentation related to at least four individuals.[3]

In addition, Home Health explains that CNS requested defense counsel reserve the week of May 13, 2013, for depositions in this case.  Defense counsel agreed.  According to Home Health, as the week drew near, CNS requested that the parties use that week to attend mediation rather than take depositions.  Defense counsel informed CNS that it intended to file a summary judgment motion and believed that mediation during the week of May 13 would be premature and ineffective. CNS did not pursue taking depositions that week or later. [Doc. 91, at 4.]

---

[3]Home Health further observes that CNS's motion to compel only addressed four interrogatories and four related document requests.  Home Health provided responsive information in relation to the discovery requests. [Doc. 91, at 3.]

16

Home Health asserts that it did not rebuff CNS's attempts to proceed to mediation, but rather, preferred to file a summary judgment motion. Home Health notes that knowing it would file this motion could have been "very good motivation" for CNS to take depositions in order to respond to the motion. Yet, CNS took no depositions.

CNS disagrees with Home Health's version of events. CNS claims that it seeks an extension of time solely as a result of Home Health's unsupportable refusal to answer discovery requests. [Doc. 96, at 2.] CNS also recites its versions of events pertaining to the May 13 week and disagrees with Home Health's summary. [Doc. 96, at 3.]

It matters not. First, the Court sustained Home Health's objections to the discovery requests at issue. Thus, with the exception of one narrow area (which may already have been addressed by Home Health), CNS is not awaiting additional discovery responses to determine which depositions it might take.

Moreover, there is no excuse for CNS's decision not to take the depositions of at least four individuals it already identified. There was no basis to await additional discovery responses when it could not be certain the Court would grant the motion to compel. This is especially true when CNS knew of at least four depositions it intended to take. In so proceeding, CNS took a risk that backfired. This was a strategic decision and a mistake.

Most importantly, the undersigned Magistrate Judge has no authority to allow any extension of discovery at this late date in view of Judge Torgerson's jury trial setting of September 9, 2013. For all of the stated reasons, the Court denies CNS's request for an extension of discovery. Should CNS find legitimate grounds to pursue an extension of discovery, CNS may request the presiding judge to vacate the present pretrial and trial settings. However, the undersigned Magistrate Judge advises that, based on these pleadings, it sees no legal basis to extend discovery.

17

## Conclusion

IT IS THEREFORE ORDERED that:

(1)     CNS's motion to compel [Doc. 51] is DENIED, with the exception of one possible

area, as described herein; and

(2)     CNS's motion for extension of discovery [Doc. 85] is DENIED.


_Lorenzo F. Garcia_
Lorenzo F. Garcia
United States Magistrate Judge

18